UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


TIFFENY ANDERSON; DIANNA BOND;
VERONICA BOYD; CRYSTAL
LARKIN; SHARONDA NIXON;
BARBARA TURNER; SHIRLEY
WASHINGTON, TANKIA AMOS,
DIANNA BOND, JOSEPHINE CAMERON,
TIFFANY PERKINS AND ROSALYN REESE                           PLAINTIFFS


VS.                              CIVIL ACTION NO. 3:12CV503TSL–MTP


VIRGINIA COLLEGE, LLC;
EDUCATION CORPORATION OF
AMERICA; EDUCATION
CORPORATION OF AMERICA, INC.;                               DEFENDANT


<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendants

Virginia College, LLC, Education Corporation of America and

Education Corporation of America, Inc. (collectively Virginia

College) to compel arbitration and stay proceedings pursuant to

Section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4, or,

in the alternative, to dismiss plaintiffs' federal claims pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiffs Tiffeny Anderson, Dianna Bond, Veronica Boyd, Crystal

Larkin, Sharonda Nixon, Barbara Turner, Shirley Washington, Tanika

Amos, Dianna Bond, Josephine Cameron, Tiffany Perkins and Rosalyn

Reese have responded in opposition to the motion and the court,

having considered the memoranda of authorities, together with

attachments, submitted by the parties, concludes that the motion
to compel arbitration and stay proceedings is well taken and
should be granted.

According to the complaint, all the plaintiffs herein were at
some point enrolled in the Medical Assistant program at Virginia
College in Jackson, Mississippi.  In this case, they have sued
Virginia College alleging, among other things, that it made
fraudulent misrepresentations "about the educational quality and
career advancement opportunities provided by the school," and that
it engaged in a pattern and practice of specifically targeting
African-Americans and women with this fraudulent scheme.
Plaintiffs allege that as a result of defendants' scheme, they are
now burdened with significant student loan debt and yet due to
manifest deficiencies in their educational instruction at Virginia
College, they do not possess the necessary qualifications for
employment in their chosen fields.  In short, they are now deeply
in debt and have worthless degrees from Virginia College.

Plaintiffs' complaint includes claims for violation of the
Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*; violation
of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et
seq.*; fraud in the inducement of the contract; negligence;
negligent hiring, retention, supervision, and control; gross
negligence; negligence per se; fraudulent misrepresentation;
breach of contract; breach of fiduciary duty; breach of the

implied covenants of good faith and fair dealing; and fraud.  As
relief, plaintiffs seek injunctive relief, declaratory relief,
economic damages, non-economic damages, punitive damages, and
attorney's fees and costs.

Defendants' motion is based on an arbitration provision
included in the Enrollment and Tuition Agreement  executed by each
plaintiff prior to her enrollment at Virginia College.   The
provision states:

> ARBITRATION:  Any claim, controversy or dispute arising
> out of or relating to this Contract or any alleged
> breach, violation or default of this Contract, together
> with all other claims, controversies or disputes of any
> nature whatsoever arising out of or in relation to the
> Student's enrollment and participation in courses at the
> College (provided such dispute is not resolved by
> negotiation between the parties within thirty days after
> notice of such alleged or threatened breach, violation
> or default by either party), shall, upon notice by
> either party to the other party, be resolved and settled
> by binding arbitration administered by the American
> Arbitration Association in accordance with its
> Commercial Arbitration Rules.  Such arbitration shall
> take place in Birmingham, Alabama.  The arbitrator is
> authorized to fashion remedies, which make the
> prevailing party whole for the demonstrated losses
> incurred, including determining that the Student should
> be enjoined from certain actions or be compelled to
> undertake certain actions, provided, however, that the
> arbitrator shall have no authority to award punitive or
> other damages (including without limitation
> consequential or incidental damages or damages for lost
> profits or lost opportunities) not measured by the
> prevailing party's actual compensatory damages.  The
> arbitrator's decision and award shall be final, binding
> on the parties, and non-appealable, and may be entered
> in any court of competent jurisdiction to enforce it.
> The parties shall, respectively, pay any expenses
> incurred as American Arbitration Association fees,
> administrative fees, arbitrator fees, mediation fees,

3

hearing fees, and postponement/cancellation fees in accordance with the rules and procedures adopted by the American Arbitration Association. Notwithstanding the provisions of this Paragraph, in the event a breach, violation or default of this Contract (or any of its terms) is alleged, the College shall have the option to seek injunctive relief in any court of competent jurisdiction barring further breach or violation of this Contract pending arbitration. BY SIGNING THIS CONTRACT, THE STUDENT (AND, IF APPLICABLE, HIS/HER PARENT OR LEGAL GUARDIAN) GIVE UP THE RIGHT TO GO TO COURT AND THE RIGHT TO TRIAL BY JURY AND EXPRESSLY ACKNOWLEDGE AND UNDERSTAND THAT HIS, HER OR THEIR RIGHTS AND REMEDIES WILL BE DETERMINED BY AN ARBITRATOR AND NOT BY A JUDGE OR JURY. THE PARTIES UNDERSTAND THAT A DETERMINATION BY AN ARBITRATOR IS AS ENFORCEABLE AS ANY ORDER AND IS SUBJECT TO VERY LIMITED REVIEW BY A COURT.

"The 'principal purpose' of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms.'" AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (U.S. 2011) (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S. Ct. 1248, 1255 (1989)). Section 2 of the FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement.

A district court adjudicating a motion to compel arbitration must engage in a two-step process. Hadnot v. Bay, Ltd., 344 F.3d 474, 476 (5th Cir. 2003). "The court must first determine whether

4

the parties agreed to arbitrate the dispute.  This determination
involves two considerations: (1) whether there is a valid
agreement to arbitrate between the parties; and (2) whether the
dispute in question falls within the scope of that arbitration
agreement.  The court then must determine if any legal constraints
foreclose arbitration of those claims." Brown v. Pacific Life
Ins. Co., 462 F.3d 384, 397 (5th Cir. 2006) (internal citations
omitted).  "The FAA expresses a strong national policy in favoring
arbitration of disputes, and all doubts concerning arbitrability
of claims should be resolved in favor of arbitration." Primerica
Life Ins. Co. v. Brown, 304 F.3d 469, 471 (5th Cir. 2002).  "The
party resisting arbitration has the burden of demonstrating why
arbitration is not appropriate." Kisner v. Bud's Mobile Homes,
512 F. Supp. 2d 549, 556–557 (S.D. Miss. 2007) (citing Green Tree
Fin. Corp. v. Randolph, 531 U.S. 79, 81, 121 S. Ct. 513, 517, 148
L. Ed. 2d 373 (2000)).

   Defendants maintain in their motion that the arbitration
provision in the Enrollment and Tuition Agreement is valid, and
that the claims asserted in plaintiffs' complaint fall within the
scope of that provision so that defendants are entitled to an
order compelling arbitration according to the terms of the
agreement.  In their response memorandum, plaintiffs "concede that
there is a valid arbitration agreement between themselves and

5

VC."[1]  However, they contend their federal claims are beyond the scope of the arbitration agreement and further, that there are external constraints that preclude enforcement of the arbitration agreement as to their federal claims.[2]

Plaintiffs base their argument that their (federal) claims are outside the scope of the arbitration provisions is based entirely on Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney, 950 So. 2d 170 (Miss. 2007).  The plaintiff in Blakeney signed an arbitration agreement in connection with his purchase of a vehicle

---

[1]     While plaintiffs purport to concede the validity of the agreement, they go on to point out that "[t]he very same agreement at issue in this case was found to be invalid in Blackmon, et al. v. Virginia College at Jackson, et al., [Cause No. 251-11-954.3] due to fraud in the inducement."  In fact, however, as defendants note, the court in the Blackmon case held only that the plaintiffs therein had "pled facts sufficient to support a finding of fraud in the making of the agreement to arbitrate, thereby extinguishing the validity of the arbitration provision."  Blackmon, Opinion and Order, PACER Doc. 11-12.  However, while fraud in the inducement of an arbitration agreement will render the arbitration agreement invalid, see Downer v. Siegel, 489 F.3d 623, 627-628 (5th Cir. 2007) ("Even if this contract had been induced by fraud, the arbitration clause is enforceable unless the plaintiffs were fraudulently induced into agreeing to the arbitration clause itself.") (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406, 87 S. Ct. 1801, 1807, 18 L. Ed. 2d 1270 (1967)), plaintiffs herein have not contended that they were fraudulently induced to enter *the arbitration agreement*.

[2]     Plaintiffs do not deny that their state law claims would be subject to arbitration, but they argue that since the arbitration agreement is unenforceable as to their federal claims, then the court ought not compel arbitration of their state claims and should instead decide the state law claims in an exercise of pendent jurisdiction.  The court will not address this argument as it concludes that all of plaintiffs' claims, state and federal, are subject to arbitration.

from Rogers-Dabbs Chevrolet-Hummer.  Subsequent to his purchase, employees of Rogers-Dabbs stole his identity and used his title to forge fraudulent titles for stolen vehicles which were sold to unsuspecting buyers.  The Mississippi Supreme Court held that Blakeney's claim of civil fraud was not subject to the arbitration agreement in the sales contract as such claim was "totally outside the formation of the agreement" and thus outside the scope of the arbitration agreement.  Blakeney, 950 So. 2d at 178, n.9.

Plaintiffs herein argue that just as Blakeney was unaware at the time he executed the arbitration agreement of the fraud perpetrated by Roger-Dabbs' employees and thus was not bound to arbitrate his claims relating to such fraud, they likewise were unaware when they executed the Enrollment and Tuition Agreements that they had been targeted for defendants' predatory fraudulent scheme because of their race, African-American, and their gender, female.[3]  In other words, plaintiffs reason that since they had no

---

[3]     Plaintiffs argue as follows:
Plaintiffs allege that Defendants were engaged in a larger fraudulent scheme of which [plaintiffs] were unaware at the time they agreed to the arbitration of claims.  Plaintiffs never contemplated that they may be falling victim to a scheme in which they were targeted (based on their race, African-American, and gender, female) with a predatory product in violation of federal law.  They never intended to sign away their civil rights protections against discrimination based on race or gender.  These claims are beyond the scope of the arbitration agreement because they were beyond Plaintiffs' contemplation, and therefore, there was no mutual assent to submit claims of this nature to arbitration.

knowledge of defendants' discriminatory fraudulent scheme, then they could not have intended that a claim for such alleged violation of their civil rights would be subject to the arbitration agreement.

As plaintiffs have clearly noted, the court in <u>Blakeney</u> did observe that Blakeney was "presumedly totally unaware" at the time he executed the arbitration agreement that he would fall victim to Roger-Dabbs' employees' fraudulent scheme; but that was not the basis of the court's ruling.  Rather, the court found that Blakeney's claim was not covered by the arbitration agreement because it did not involve any fraud relating to his purchase of the vehicle, which was what the arbitration agreement covered, and instead, the claim related to Roger-Dabbs' employees' post-sale fraudulent scheme to use Blakeney's identity and documents in a criminal enterprise involving the sale of stolen vehicles.  <u>See</u> <u>Blakeney</u>, 950 So. 2d at 177 (stating that "today's case does not involve a claim of fraud in the inducement of the formation of the contract containing the arbitration clause, all in an effort to invalidate the arbitration agreement; instead, today's case involves the claim of civil fraud totally outside the formation of the agreement"); <u>see also</u> <u>Bridgestone Firestone N. Am. Tire, LLC. v. J&J Tire Co., LLC.</u>, 602 F. Supp. 2d 770, 773 (S.D. Miss. 2009) (discussing and distinguishing <u>Blakeney</u>); <u>Harris v. Coldwell Banker Real Estate Corp.</u>, Civil Action No. 4:05CV176-P-A, 2007 WL

2127585, 2 (N.D. Miss. July 23, 2007) (observing that "the *Blakeney* decision, by its own terms, limited its ruling to the facts of that case").

In the court's opinion, plaintiffs' claims in this case arose "in relation to [their] enrollment and participation in courses at the College" and thus are subject to the arbitration clause. Plaintiffs' claims in this case do not fall outside the scope of the arbitration agreement simply because plaintiffs were allegedly oblivious to defendants' alleged scheme to fraudulently induce them to enter the Enrollment and Tuition Agreement. Plaintiffs' further allegation that defendants' alleged scheme targeted African-American women and hence violated federal civil rights laws, does not alter the fact that their claims ultimately involves discrimination and fraud relating to the formation of the contract and as such, fall within the broad scope of the arbitration agreement.

As noted, plaintiffs also argue that even if their federal claims could fairly be considered to be covered by the arbitration agreement, they still may not be compelled to arbitrate them as there are various external legal constraints to enforcement of the arbitration agreement. In this vein, they first argue that the arbitration provision conflicts with the Equal Credit Opportunity Act (ECOA) because the ECOA provides for the recovery of punitive damages whereas the arbitration clause prohibits the award of

punitive damages.  In fact, however, the arbitration provision
does allow for the recovery of punitive damages; it merely
provides that any such award must be "measured by the prevailing
party's actual compensatory damages."[4]  Moreover, this court has
rejected a similar argument in a case involving alleged violations
of the Truth-in-Savings Act, stating,

> [T]he plaintiffs maintain that they are entitled to
> pursue punitive or exemplary damages under the [Truth in
> Savings Act] and that the arbitration agreement is
> unenforceable because it specifically excludes such
> recovery.  The Third Circuit rejected a similar argument
> by finding that a contractual waiver of punitive damages
> is irrelevant to the issue of whether the plaintiff's
> claims should be arbitrated, even if such damages are
> recoverable under the statute.  Great Western Mortgage
> Corp. v. Peacock, 110 F.3d 222, 232 (3rd Cir. 1997).
> Moreover, the United States Supreme Court has repeatedly
> stated that, "by agreeing to arbitrate a statutory
> claim, a party does not forego the substantive rights
> afforded by the statute: it only submits to their
> resolution in an arbitral, rather than a judicial,
> forum." [Mitsubishi Motors Corp., v. Soler Chrysler-
> Plymouth, Inc., 473 U.S. 614, 628 (1985).]  Thus, the
> Court finds that a contractual waiver of punitive

---

[4]    Plaintiffs must acknowledge that the Supreme Court has
previously upheld the application of the FAA to the ECOA.  See
Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 121 S. Ct.
513, 148 L. Ed. 2d 373 (2000); Cronin v. CitiFinancial Servs.,
2008 WL 2933869 *7 (E.D. Pa. July 24, 2008) ("[T]he Supreme Court
has upheld the application of the FAA to claims under many
important statutory schemes, including . . . the Equal Credit
Opportunity Act."); see also Scott v. EFN Investments, LLC, 312
Fed. Appx. 254, 2009 WL 368333 (11th Cir. 2009) (holding that car
buyer was required to arbitrate dispute against dealership and
others alleging violations of ECOA arising from rescission of car
sales agreement).  Thus, plaintiffs' contention is not that the
FAA conflicts with the ECOA, but that certain provisions of the
specific arbitration agreement at issue herein conflict with the
ECOA.

       damages is not a valid ground for refusing to compel
       arbitration.

Herrington v. Union Planters Bank, N.A., 113 F. Supp. 2d 1026

(S.D. Miss. 2000).

       Along these lines, plaintiffs also argue that the arbitration
clause conflicts with the ECOA because, in direct conflict to the
ECOA which provides that costs of the action and a reasonable
attorney's fee shall be added to damages awarded to a successful
claimant, see 15 U.S.C. 1691e(d), the arbitration clause requires
each party to pay fees associated with the arbitration in
accordance with the rules and procedures adopted by the American
Arbitration Association and makes no provision for an award of
costs or attorney's fees.  However, the arbitration provision does
not preclude an award of attorney's fees and costs.  On the
contrary, the arbitration clause specifies that disputes are to
"be resolved and settled by binding arbitration administered by
the American Arbitration Association [AAA] in accordance with its
Commercial Arbitration Rules"; and the AAA's Rules provide that
the "award of the arbitrator(s) may include ... an award of
attorney's fees if all parties have requested such an award or it
is authorized by law or their arbitration agreement."  Commercial
Arbitration Rule R-43(d)(ii).  The AAA's Rules also allow an
arbitrator to assess costs.  R-43(c); R-50.  Since an award of
attorney's fees and costs is included as part of the substantive

11

damage award under the ECOA, then plaintiffs would be entitled to such fees and costs as damages if they were to succeed on their claim.  Cf. James v. Conceptus, Inc., 851 F. Supp. 2d 1020, 1039 (S.D. Tex. 2012) (attorney's fees and litigation costs were categorized as a subset of damages under False Claims Act whistleblower statute recoverable as damages in arbitration) (citing Moran v. Superior Court, No. F061801, 2011 WL 5560178, at *9 (Cal. Ct. App. Nov. 16, 2011) ("An award of costs to the prevailing party is also authorized by statute and, in accordance with the applicable substantive law, must be made by the arbitrator as a matter of right unless an exception applies. Consequently, the arbitration agreement does not impermissibly deny or limit the availability to plaintiff of an award of attorney fees or costs, or any other relief available under the applicable substantive law.").

Plaintiffs next declare that "[t]he arbitration of claims against educational institutions that are largely funded by taxpayer dollars is against public policy."  This bald assertion, for which plaintiffs offer no authority, cannot be squared with the strong federal policy favoring enforcement of arbitration agreements.  See Washington Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 263 (5th Cir. 2004) ("The FAA expresses a strong national policy favoring arbitration of disputes, and all doubts

concerning the arbitrability of claims should be resolved in favor of arbitration.").

Though they do not explicitly characterize the arbitration agreement as unconscionable, plaintiffs do object that the arbitration provision is unduly burdensome in at least two respects. See Kisner, 512 F. Supp. 2d at 556 ("Plaintiffs may prove substantive unconscionability if they can establish that the terms of the arbitration clause were oppressive."). First, it imposes upfront costs of arbitration that plaintiffs claim are prohibitively expensive for them, and second, it requires that "arbitration shall take place in Birmingham, Alabama." Neither objection is well taken.

In Green Tree Financial Corp.–Alabama v. Randolph, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000), the Supreme Court considered "whether an arbitration agreement that does not mention arbitration costs and fees is unenforceable because it fails to affirmatively protect a party from potentially steep arbitration costs." Green Tree, 531 U.S. at 82, 121 S. Ct. 513. The Supreme Court noted that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum," making the agreement unenforceable. Id. at 90, 121 S. Ct. 513. The Court held that "where ... a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that

13

party bears the burden of showing the likelihood of incurring such costs." Id. at 92, 121 S. Ct. 513. In Green Tree, the Court found that the claimant did not meet that burden because she presented only unsupported statements in her brief, and provided no factual evidentiary basis on which to ascertain the actual costs and fees to which she would be subject in arbitration. Id. at 90-91 & n.6, 121 S. Ct. 513. Likewise, here, plaintiffs have presented no proof that they are likely to incur costs, what those costs are likely to be, that the amount would be prohibitively expensive or that they would not be entitled to relief under applicable FAA rules.[5] Here, as in Green Tree, "[t]he 'risk' that Randolph will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Id. at 91, 121 S. Ct. 513.

There is no merit to plaintiffs' further assertion that the arbitration agreement is enforceable because it is calculated to deter students from bringing claims by requiring arbitration in Alabama (corporate headquarters of Virginia College), "regardless of the student's state of residence or ability to travel." Even if the forum selection clause in the arbitration provision were found to be unenforceable, that would not be grounds for

---

[5]     Defendants point out that the rules of the AAA provide plaintiffs with avenues to request fee-paying relief. Rule 49 of the AAA's Commercial Arbitration Rules specifically provides that "[t]he AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees."

14

invalidating the entire agreement; at most, the court would rule that provision unenforceable.  However, plaintiffs have not demonstrated that even such limited relief is warranted.

Under Mississippi law, a mandatory forum selection clause is presumptively valid and enforceable unless the resisting party can show:

> 1. Its incorporation into the contract was the result of fraud, undue influence or overwhelming bargaining power;
>
> 2. The selected forum is so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of its day in court; or
>
> 3. The enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.

Titan Indemnity Co. v. Hood, 895 So. 2d 138, 146 (Miss. 2004) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13, 92 S. Ct. 1907, 1914, 1916-1917, 32 L. Ed. 2d 513 (1972)).  In their memorandum, plaintiffs argue that requirement of arbitration in Alabama is "oppressive" and that arbitration in Alabama would not be "feasible," yet they plainly have not even attempted to show that the Alabama forum "is so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court."  Id.

Plaintiffs finally argue that "[t]he arbitration of federal civil rights claims is against public policy."  This position is also without merit.  As defendants note, the Supreme Court has explicitly held that arbitration agreements which encompass statutory claims are generally enforceable under the FAA, see

15

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed.2 d 26 (1991) (finding claim under Age Discrimination in Employment Act subject to compulsory arbitration), and held that the burden is on the party opposing arbitration to show that Congress specifically intended to preclude a waiver of a judicial forum for the subject statutory claims, id. Plaintiffs have not, and cannot meet this burden. See Green Tree, 531 U.S. at 90, 121 S. Ct. 513 (stating that "even claims arising under a statute designed to further important social policies may be arbitrated because '"so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,"' the statute serves its functions.") (citing inter alia Gilmer, 500 U.S. at 28, 111 S. Ct. 1647)); cf. Alford v. Dean Witter Reynolds, Inc., 939 F.2d 229, 230 (5th Cir. 1991) (observing that "[a]ny broad public policy arguments against [subjecting Title VII claim to compulsory were necessarily rejected by Gilmer[,]" and holding that "Title VII claims can be subjected to compulsory arbitration").

Accordingly, based on the foregoing, it is ordered that defendants' motion to compel arbitration is granted, and it is further ordered that this cause is stayed pending arbitration. See 9 U.S.C. § 3 (requiring that court stay litigation of arbitral claims pending arbitration of those claims in accordance with the

16

terms of the agreement).  The clerk of court is directed to administratively close the case pending arbitration.

SO ORDERED this 13th day of September, 2012.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE